IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JUNIUS LEISURE                    )
                                  )
          Plaintiff               )
                                  )    Civil Action
     v.                           )    No. 10-cv-07565
                                  )
STATE OF PENNSYLVANIA DEPARTMENT  )
     OF CHILD YOUTH SERVICES,¹    )
WILNIA GONZALEZ                   )
SHEA KINSEY, and                  )
JESSICA HAMBY,                    )
                                  )
          Defendants              )
```

                    *      *      *

---

¹       As a preliminary matter, I note that both the caption of plaintiff's Amended Complaint and the electronic docket for this case identifies the State of Pennsylvania Department of Child Youth Services as a named defendant in this matter.  Specifically, the Amended Complaint identifies "Defendant 1, Department of Child Youth Services, public child welfare agency having its location at 900 East King Street, Lancaster, [PA] 17602."  (Amended Complaint at page 1.)  However, 900 East King Street, Lancaster, Pennsylvania 17602 is the address of the Lancaster County Children and Youth Social Service Agency ("LCCYSSA").

        Plaintiff's Amended Complaint further avers that the "Lancaster County Children and Youth Agency...violated my 14th Amendment Right to Due Process".  (Amended Complaint at page 27.)  Moreover, it was the LCCYSSA – and not department of the Commonwealth of Pennsylvania -- that filed the Petitions in the Court of Common Pleas of Lancaster County which resulted in the termination of plaintiff's parental rights.  (See Defendants' Motion to Dismiss, Exhibit A.)

        Indeed, on the Process Receipt and Return forms, which plaintiff completed and signed, and which he filed with this court on August 19, 2011 (Document 17), plaintiff wrote "Children and Youth Agency of Lanc. Co[.]" in the field labeled "DEFENDANT".

        Finally, in I note that it does not appear that a "Department of Child Youth Services" exists as an agency or department of the Commonwealth of Pennsylvania.  The Department of Public Welfare exists as a department within the Commonwealth of Pennsylvania.  The Office of Children, Youth and Families exists within the Department of Public Welfare.  Finally, the Bureau of Child Welfare Services exists within the Office of Children, Youth and Families. However, it does not appear that any of these agencies or departments participated in the dependency and termination-of-parental-rights proceedings from which this action arose.

        For these reasons and because I must construe pro se pleadings liberally, I construe plaintiff's Amended Complaint as naming the LCCYSSA as "Defendant 1" for the purposes of this Opinion.

APPEARANCES:

    JUNIUS LEISURE,
        Pro se

    DAVID LEE SCHWALM, ESQUIRE
        On behalf of Defendants Wilina Gonzalez,
        Shea Kinsey, and Jessica Hamby

                *     *     *

O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

      This matter is before the court on Defendants' Motion to Dismiss, filed by defendants Wilina Gonzalez, Shea Kinsey, and Jessica Hamby on August 26, 2011.[2]  Plaintiff filed his Response to Defendants['] Motion to Dismiss pro se on October 13, 2012.

      For the reasons articulated below, I grant the motion to dismiss filed by defendants Gonzalez, Kinsey, and Hamby and

---

[2]    Defendants' motion was filed together with the following documents:

    1.    Memorandum of Law in Support of Defendants' Motion to Dismiss (Document 18-5);

    2.    Memorandum Opinion and Decree entered by Judge Jay J. Hoberg of the Court of Common Pleas of Lancaster County, Pennsylvania, Orphans' Court Division, in In re S.R.C., Case No. 0421 of 2008, and In re F.R.L., Case No. 0917 of 2008, which Memorandum Opinion and two Decrees were executed by Judge Hoberg on May 19, 2009 and attached as Exhibit A to defendants' motion to dismiss (Document 18-1);

    3.    Unpublished, non-precedential Memorandum of the Superior Court of Pennsylvania In re S.R.C., Case No. 1016-MDA-2009, and In re F.R.L., Case No. 1017-MDA-2009, which memorandum was filed by the Superior Court on December 9, 2009 and was attached as Exhibit B to defendants' motion (Document 18-2); and

    4.    Per curiam Order denying plaintiff's Petitions for Allowance for Appeal filed in In re S.R.C., Case No. 1012-MAL-2009, and In re F.R.L., Case No. 1013-MAL-2009, which Order was attached as Exhibit C to defendant's motion (Document 18-3).

-2-

dismiss plaintiff's Amended Complaint without prejudice for plaintiff to file a second amended complaint in accordance with this Opinion.

First, I dismiss plaintiff's request for an Order from this court granting plaintiff custody of his two daughters, F.R.L. and S.R.C., and reinstating his parental rights because under the Rooker-Feldman doctrine[3], this court does not have jurisdiction to issue such an Order.

Next, I dismiss the Lancaster County Children and Youth Social Service Agency as a defendant in this action because as an administrative arm or department of a municipal government, LCCYSSA is not a proper party to this Action.

Finally, I dismiss plaintiff's claims against defendants Gonzalez, Kinsey, and Hamby in Counts I through IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

<u>JURISDICTION</u>

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to plaintiff's claims allegedly occurred within this judicial district.

---

[3]    Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

<u>PROCEDURAL HISTORY</u>

<u>State Court Proceedings</u>

On May 9, 2011 plaintiff Junius Leisure filed a pro se Amended Complaint alleging violations of the Fourth, Fifth and Sixth Amendments to the United States Constitution.  Plaintiff's claims arise out of proceedings in the Court of Common Pleas of Lancaster County, Pennsylvania, Orphans' Court Division, which resulted in the termination of his parental rights to his two minor daughters, S.R.C. and F.R.L.

Plaintiff's parental rights to both his children were terminated by two separate Decrees and a single consolidated Memorandum Opinion issued by Lancaster County Common Pleas Judge Jay J. Hoberg on May 19, 2009.  Plaintiff appealed the termination of his parental rights to the Superior Court of Pennsylvania.  On December 9, 2009, the Superior Court of Pennsylvania affirmed Judge Hoberg's decisions terminating plaintiff's parental rights.[4]  On February 12, 2010, the Supreme Court of Pennsylvania denied plaintiff's Petition for Allowance of Appeal.[5]

---

[4]   <u>See</u> the unpublished, non-precedential Memorandum of the Superior Court of Pennsylvania in <u>In re S.R.C.</u>, Case No. 1016-MDA-2009, and <u>In re F.R.L.</u>, Case No. 1017-MDA-2009, which memorandum was filed by the Superior Court on December 9, 2009 and was attached as Exhibit B to defendants' motion (Document 18-2).

[5]   <u>See</u> Per curiam Order denying plaintiff's Petitions for Allowance for Appeal filed in <u>In re S.R.C.</u>, Case No. 1012-MAL-2009, and <u>In re F.R.L.</u>, Case No. 1013-MAL-2009, which Order was attached as Exhibit C to defendant's motion (Document 18-3).

-4-

<u>Federal Action</u>

Plaintiff filed a Petition for Leave to Proceed In Forma Pauperis on December 29, 2010. By Order dated January 18, 2011, I granted plaintiff's petition and directed the Clerk of Court to file plaintiff's Complaint and serve Summons and the Complaint on the defendants. Plaintiff's Complaint was filed January 20, 2011.

Plaintiff filed a Petition for Modification of a Custody, Partial Custody, or Visitation Order and a Motion to Appoint Counsel pro se on January 20, 2011. Both of these motions were denied by my Order dated March 9, 2010 and filed March 10, 2011.

Plaintiff's Motion for Leave to File a First Amended Complaint was filed pro se March 14, 2011. That motion was granted by my Order dated April 27 and filed April 28, 2011.

Plaintiff filed his Amended Complaint pro se on May 9, 2011. Both defendant Hamby and the "Lanc. Co. Children and Youth Agency" were served with the Amended Complaint on August 5, 2011.[6] Defendants Kinsey and Gonzalez were each served with the Amended Complaint on August 9, 2011.[7]

Defendants Gonzalez, Hamby, and Kinsey jointly filed Defendants' Motion to Dismiss, which seeks dismissal of the Amended Complaint, on August 26, 2011.

---

[6]     Process Receipt and Return (Document 17) at pages 1-2.

[7]     Process Receipt and Return (Document 16) at pages 1-2.

By Order dated September 13 and filed September 14, 2011, I granted plaintiff's Motion for Extension of Time to Oppose the Defendants['] Motion to Dismiss the Complaint and granted plaintiff until October 11, 2011 to respond to the motion to dismiss.  On October 13, 2011, plaintiff filed his Response to Defendants['] Motion to Dismiss.

<u>STANDARD OF REVIEW</u>

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (<u>abrogated in other respects by Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Rule 8(a)(2) "[does] not require heightened fact pleading of specifics, but only enough facts to

state a claim to relief that is plausible on its face." <u>Twombly</u>,
550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[8]

In determining whether a plaintiff's complaint is
sufficient, the court must "accept all factual allegations as
true, construe the complaint in the light most favorable to the
plaintiff, and determine whether, under any reasonable reading,
the plaintiff may be entitled to relief." <u>Fowler</u>, 578 F.3d
at 210 (quoting <u>Phillips v. County of Allegheny</u>, 515 F.3d 224,
233 (3d Cir. 2008)).

Although "conclusory or 'bare-bones' allegations will
[not] survive a motion to dismiss," <u>Fowler</u>, 578 F.3d at 210, "a
complaint may not be dismissed merely because it appears unlikely
that the plaintiff can prove those facts or will ultimately
prevail on the merits." <u>Phillips</u>, 515 F.3d at 231.  Nonetheless,
to survive a 12(b)(6) motion, the complaint must provide "enough
facts to raise a reasonable expectation that discovery will
reveal evidence of the necessary element[s]." <u>Id.</u> (quoting

---

[8]     The Opinion of the United States Supreme Court in <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, ___, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009),
states clearly that the  "facial plausibility" pleading standard set forth in
<u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC
Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

This showing of facial plausibility then "allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged," and that the plaintiff is entitled to relief.  <u>Fowler</u>, 578 F.3d at
210 (quoting <u>Iqbal</u>, 556 U.S. at ___, 129 S.Ct.  at 1949, 173 L.Ed.2d at 884).

As the Supreme Court explained in <u>Iqbal</u>, "[t]he plausibility
standard is not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that the defendant acted unlawfully." <u>Iqbal</u>, 556 U.S. at
___, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940)
(internal quotation omitted).

      The court is required to conduct a two-part analysis
when considering a Rule 12(b)(6) motion.  First, the factual
matters averred in the complaint, and any attached exhibits,
should be separated from legal conclusions asserted therein.
Fowler, 578 F.3d at 210.  Any facts pled must be taken as true,
and any legal conclusions asserted may be disregarded.  Id.
at 210-211.

      Second, the court must determine whether those factual
matters averred are sufficient to show that the plaintiff has a
"plausible claim for relief."  Id. at 211 (quoting Iqbal,
556 U.S. at __, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

      Ultimately, this two-part analysis is "context-
specific" and requires the court to draw on "its judicial
experience and common sense" to determine if the facts pled in
the complaint have "nudged [plaintiff's] claims" over the line
from "[merely] conceivable [or possible] to plausible."  Iqbal,
556 U.S. at __, 129 S.Ct. at 1950-1951, 178 L.Ed.2d at 884-885
(internal quotations omitted).

      A well-pleaded complaint may not be dismissed simply
because "it strikes a savvy judge that actual proof of those
facts is improbable, and that a recovery is very remote and
unlikely."  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965,
167 L.Ed.2d at 940-941.

In addition to being subject to Rule 8 and Rule 12 of the Federal Rules of Civil Procedure, proceedings *in forma pauperis* are governed by 28 U.S.C. § 1915.  Section 1915(e) provides, in pertinent part, that "the court shall dismiss the case at any time if the court determines that...the action...fails to state a claim on which relief may be granted". 28 U.S.C. § 1915(e)(2)(ii).

While pro se complaints are to be liberally construed, Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976), a pro se plaintiff must still plead the essential elements of his or her claims and is not excused from conforming to the standard rules of civil procedure.  McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 124 L.Ed.2d 21, 28-29 (1993).

<u>FACTS</u>

Based on the averments in plaintiff's Amended Complaint, which I must accept as true for purposes of this Opinion under the applicable standard of review discussed above, the pertinent facts are as follows.

Plaintiff Junius P. Leisure is the biological father of two daughters, S.R.C. (born in April 2005) and F.R.L. (born in July 2003).  Renee Jo Caldwell is the biological mother of S.R.C. Filena Marie Caldwell (also known as Filena Marie Leisure) is the biological mother of F.R.L.  The biological mothers of F.R.L. and S.R.C. are, themselves, sisters.

-9-

The individual defendants -- Wilina Gonzalez, Shea Kinsey, and Jessica Hamby -- are former caseworkers for the LCCYSSA.

The LCCYSSA first became involved with plaintiff and his children when, in December 2005, plaintiff reported to LCCYSSA that the house where F.R.L. lived was unhygienic and did not have proper heat.  At that time, F.R.L. and S.R.C. lived in a five-bedroom home together with their respective mothers, their uncle, their maternal grandmother, and F.R.L.'s two older sisters.

The LCCYSSA made two unannounced visits to the five-bedroom house in early January 2006 and found it in deplorable condition with a significant number of safety and sanitary concerns including feces smeared on some walls and in some of the bedding.  The LCCYSSA also visited plaintiffs home because F.R.L. would spend some weekends there at the time.

Later in January 2006, after the five-bedroom house was cleaned up, a Family Service Plan was established for the mothers of F.R.L. and S.R.C., and for plaintiff.  Plaintiff contends that at this point, he was expecting to receive custody of both F.R.L. and S.R.C., and that he was taken aback by the LCCYSSA's creation of the Family Service Plan, which he did not sign until March 2006.

Sometime in February 2006, F.R.L. began living with plaintiff at his home, while S.R.C. continued to live in the five-bedroom home with her mother, and the others. An unidentified caseworker from the LCCYSSA brought a child-safety gate to plaintiff's home shortly after F.R.L. began living there and told plaintiff to install the safety gate. Plaintiff refused to do so, contending that the gate was too big to install and would have caused a grave danger to any occupants.

In March 2006 plaintiff alleged that the uncle who resided in the five-bedroom house had sexually abused F.R.L. in the past. Plaintiff made no allegations regarding any abuse of, or risk to, S.R.C. and did not attempt to remove S.R.C. from the house where the uncle also lived.

Plaintiff asserts that although he was initially reluctant to submit to supervision by the agency, he signed the Family Service Plan in March 2006. Plaintiff contends that the LCCYSSA misinterpreted his initial reluctance to participate in the Family Service Plan as his being uncooperative and argumentative, and that this misinterpretation of plaintiff continued throughout the state-court proceedings which led to the termination of his parental rights.

In September 2006 the LCCYSSA took physical custody of S.R.C. because of significant concerns about the conditions in the five-bedroom home.

-11-

The LCCYSSA obtained legal custody of S.R.C. when she was adjudicated dependant in October 2006.  Also in October 2006 plaintiff tested positive for marijuana when he submitted to a drug screen requested by the LCCYSSA.

In December 2006 the LCCYSSA received a report that plaintiff was in a psychiatric hospital and that F.R.L. was then in the custody of her mother.   The LCCYSSA took physical custody of F.R.L. in December 2006.  In March 2007, F.R.L. was adjudicated dependant and the LCCYSSA obtained legal custody of her.

Upon adjudicating both S.R.C. and F.R.L. dependant, the Court of Common Pleas of Lancaster County, Pennsylvania, Orphans Court Division, approved a Child Permanency Plan for each child. The plan required plaintiff to demonstrate (1) an ongoing commitment to each child; (2) stable mental health; (3) maintenance of a crime-free lifestyle and violence-free relationships; and (4) and a life free from the use of illegal drugs or the misuse of alcohol.  Plaintiff's plan concerning S.R.C. was established October 10, 2006.  His plan concerning F.R.L. was established March 7, 2007.

On June 6, 2007, plaintiff obtained a drug and alcohol evaluation.  He was diagnosed with cannabis dependence and poly-substance dependance in remission.  Short-term drug and alcohol treatment was recommended.  On September 5, 2007, plaintiff received a psychological evaluation and it was recommended that

plaintiff continued with drug and alcohol counseling and that he receive individual, couples, and family counseling as well as anger management counseling.

On February 15, 2008 plaintiff reported to the LCCYSSA that he had completed both the required drug and alcohol treatment, and the required mental-health component of his treatment, including anger management.  However, the information provided to LCCYSSA by plaintiff's treatment service provider indicated that plaintiff had only completed the drug and alcohol treatment required to comply with plaintiff's Child Permanency Plans.

On February 28, 2008 the LCCYSSA filed a Petition to terminate plaintiff's parental rights concerning S.R.C.  On May 2, 2008 the LCCYSSA filed a petition to terminate plaintiff's rights concerning F.R.L.

S.R.C.'s mother consented to S.R.C.'s adoption on June 26, 2008.  F.R.L.'s mother consented to F.R.L.'s adoption on August 14, 2008.  Plaintiff challenged the Petitions filed by the LCCYSSA; and the Court of Common Pleas of Lancaster County, Orphans Court Division, held consolidated hearings on the Petitions on October 14, December 8-9 and 15, 2008.

DISCUSSION

Rooker-Feldman Doctrine

The Rooker-Feldman doctrine establishes that a United States District Court has "no authority to review final judgments of a state court in judicial proceedings" and that the district court lacks subject matter jurisdiction insofar as a plaintiff seeks review of a state court's judgment. Great Western Mining & Mineral Company v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

Where a plaintiff seeks reversal of a state court judgment as redress for a wrong caused by that judgment, the district court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.  Id. at 166-167.  However, where a plaintiff alleges violations caused by a defendant's actions, "the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Id. at 167.

The moving defendants in the instant case contend that plaintiff's Amended Complaint should be dismissed pursuant to the Rooker-Feldman doctrine because plaintiff's allegations are inextricably intertwined with the state court proceedings which resulted in the termination of plaintiff's parental rights.[9]

---

[9]    Memorandum of Law in Support of Defendants' Motion to Dismiss at page 20 (citing Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004)).

-14-

Specifically, the moving defendants contend that, to the extent that Plaintiff seeks an order from this court granting plaintiff custody of S.R.C. and F.R.L. and reinstating plaintiff's parental rights, this court does not have jurisdiction "over that issue."[10]

Plaintiff does not address the moving defendants' Rooker-Feldman argument in his Response to Defendants['] Motion to Dismiss.[11]  However, because plaintiff is proceeding pro se and because the argument challenges the subject matter jurisdiction of this court to grant relief requested by plaintiff, I will address the substance of defendants' argument rather than treating it as uncontested.

The United States Court of Appeals for the Third Circuit has stated that

> there are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

Great Western, 615 F.3d at 166 (citing Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).  The United States Court

---

[10]     Memorandum of Law in Support of Defendants' Motion to Dismiss at pages 20-21.

[11]     See Response to Defendants' Motion to Dismiss.

of Appeals for the Third Circuit noted that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Id.

Here, the first and third prongs are easily satisfied. As discussed above, plaintiff lost in state court and the state court judgment was rendered before plaintiff's federal suit was filed. Specifically, the Court of Common Pleas of Lancaster County, Pennsylvania, Orphans' Court Division, terminated plaintiff's parental rights concerning his two minor daughters, S.R.C. and F.R.L. Then, the Superior Court of Pennsylvania affirmed the Common Pleas Court's decision. Finally, the Supreme Court of Pennsylvania denied plaintiff's Petition for Allowance of Appeal of the decision by the Superior Court.

Each of these state-court decisions were issued prior to plaintiff filing his Petition to Proceed In Forma Pauperis in this court on December 29, 2010 and the filing of his Complaint here on January 20, 2011. Thus, the first and third requirements for the application of the Rooker-Feldman doctrine are satisfied.

The issue, therefore, becomes whether the plaintiff satisfies the second prong of the four-prong test; that is, whether plaintiff complains of injuries caused by the state court judgment terminating his parental rights, and whether plaintiff is requesting this court to review and reject the state court rulings terminating his parental rights.

The second prong "may also be thought of as an inquiry into the source of plaintiff's injury."  Great Western, 615 F.3d at 166.  The Third Circuit Court of Appeals explained that "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent" and "[t]he critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  Great Western, 615 F.3d at 167.

The fourth prong -- whether plaintiff invites the district court to review and reject a prior state-court judgment -- is "closely related" to the second prong.  Great Western, 615 F.3d at 168.  However, satisfaction of the second prong is not per se satisfaction of the fourth prong.  Id.

The fourth prong is meant to insure that a district court does not engage in prohibited appellate review of a state-court judgment.  Great Western, 615 F.3d at 169.  A district court may not review proceedings already conducted by a state court to determine whether the state court reached its decision in accordance with law.  Where a plaintiff asserts a claim for damages which "may require review of state-court judgments and even a conclusion that they were erroneous," the fourth prong is

not automatically satisfied.  Id. at 173; see Goodson v. Maggi,

797 F.Supp.2d 587, 600-601 (W.D.Pa. 2011).(citing Great Western,

615 F.3d at 173).

Rather, the Rooker-Feldman doctrine bars a claim to the

extent that adjudicating it would mean that "(1) the federal

court must determine that the state court judgment was

erroneously entered in order to grant the requested relief, or

(2) the federal court must take an action that would negate the

state court's judgment...." Easley v. New Century Mortgage

Corporation, 394 Fed.Appx. 946, 948 (3d Cir. 2010) (quoting

In re Knapper, 407 F.3d 573, 580 (3d Cir.2005).[12]

Here, plaintiff seeks money damages, interest, costs,

attorney's fees, expenses for the constitutional violations

alleged in each of Counts I through IV of the Amended Complaint.

However, before his prayer for money damages, plaintiff "prays

for an entry of judgment as follows: (1) Allow Plaintiff to have

custody of his children.  (2) Allow the reinstatement of the

Plaintiff's parental rights."[13]

---

[12]    Where a plaintiff's complaint effectively seeks to reverse a state
court custody order by requesting an order from the district court which is
inconsistent with the state court's custody order, that claim for relief is
jurisdictionally barred by the Rooker-Feldman doctrine.  Gass v. NJ Division
of Youth & Family Services, 2009 WL 2878456, at *3 (D.N.J. September 2, 2009),
aff'd sub nom Gass v. DYFS Workers, 371 Fed.Appx. 315, 315-316 (3d Cir. 2010).

[13]    Amended Complaint at page 29.

Judge Hoberg issued two Decrees on May 19, 2009, which terminated plaintiff's parental rights as father of S.R.C. and F.R.L. and which ordered both minors to remain in the custody of the LCCYSSA.[14]  Any judgment or order of this court granting plaintiff custody of S.R.C. or F.R.L. and reinstating plaintiff's parental rights concerning S.R.C. or F.R.L. would constitute an action negating the judgment of the Court of Common Pleas of Lancaster County, Pennsylvania, Orphan's Court Division, which the Superior Court of Pennsylvania affirmed, and which the Supreme Court of Pennsylvania declined to review further.  See Easley, supra.

Because the Rooker-Feldman doctrine bars this court from entering an order granting custody of S.R.C. and F.R.L. to plaintiff and or reinstating plaintiff's parental rights concerning S.R.C. or F.R.L., plaintiff's prayer for such relief is dismissed with prejudice.

I will now address the claims asserted by plaintiff in the Amended Complaint.

LCCYSSA

Defendant contends that, to the extent that plaintiff seeks to assert any claim against the LCCYSSA, that agency is "not a legal entity separate and apart from Lancaster County."[15]

_____

[14]    Exhibit A, Amended Complaint.

[15]    Memorandum of Law at page 5.

-19-

Plaintiff contends that "Lancaster County's [O]ffice of Child and Youth Services" is "the governing authority legally responsible for the administration of an agency that provides social services" and, therefore, "comes under the definition of legal entity" in 5 Pa.Code § 3680.4.[16]

Title 5, Chapter 3680 of the Pennsylvania Code contains regulations governing the administration and operation of a children and youth social service agency in the Commonwealth. Definitions of regulatory terms are provided in 5 Pa.Code § 3680.4.  An " Agency" is defined as "[a] children and youth social service agency subject to the requirements of this chapter."  Id.

A "Legal entity" is defined as "[a] person, society, corporation, governing authority or partnership legally responsible for the administration and operation of an agency that provides social services for a child."  Id.  Thus, under the regulations referenced by defendant, an agency is administered

---

[16]    Response to Defendants['] Motion to Dismiss at page 3.

        The home page of the Lancaster County government website provides a drop-down menu which allows visitors to "Select a Department".  If the "Children and Youth" option is selected, the visitor is taken to a page with information concerning the Lancaster County Children and Youth Social Service Agency ("LCCYSSA").

        That webpage states that LCCYSSA is "a public child welfare agency that provides protection services to Lancaster County's most vulnerable citizens - our children. The Agency's mission is to protect the health, permanency, safety and emotional well-being of children and youth at risk of abuse and neglect."  See Lancaster County, Pa. Government Online, http://www.co.lancaster.pa.us/lanco/site/default.asp (last visited February 22, 2012).  Thus, it appears that LCCYSSA is a department of Lancaster County, Pennsylvania.

and operated by a legal entity, but the agency itself is not defined as a legal entity.

The United States Court of Appeals for the Third Circuit has noted that a municipal department or agency cannot be sued alongside a municipality when the municipal department or agency is merely an administrative arm of the municipality itself.  Hernandez v. Borough of Palisades Park Police Department, 58 Fed.Appx. 909, 912 (3d Cir. 2003); see also Open Inns, Ltd. v. Chester County Sheriff's Department, 24 F.Supp.2d 410, 416 n.13 (E.D.Pa. 1998)(Dalzell, J.); Irvin v. Borough of Darby, 937 F.Supp. 446, 450 (E.D.Pa. 1996) (Joyner, J.).

As explained in footnote 1, above, although the caption of plaintiff's Amended Complaint identifies "State of Pennsylvania Department of Child Youth Services" as the first named defendant in this action, I construe plaintiff's Amended Complaint as identifying LCCYSSA as the first named defendant in the Amended Complaint, or what plaintiff calls "Defendant 1".[17]

---

[17]     The individual defendants recognize plaintiff's intent as well. Specifically, their motion to dismiss plaintiff's amended complaint states that "[a]lthough Defendant State of Pennsylvania, Department of Child Youth Services is not represented by counsel for Defendants Gonzalez, Kinsey[,] and Hamby, Defendants move to dismiss Lancaster County's Office of Children and Youth Services to the extent that Plaintiff means to assert his claims against that entity."  (Defendants' Motion to Dismiss at page 1, footnote 1.)

Moreover, the individual defendants argue (1) that any claims asserted by plaintiff against LCCYSSA should be dismissed because LCCYSSA a county department and not legal entity which can be sued on its own, and (2) that plaintiff fails to state a claim against Lancaster County pursuant to 42 U.S.C. § 1983 because plaintiff has not identified a municipal policy or custom that caused the alleged violation of his constitutional rights. (Memorandum of Law in Support of Defendants' Motion to Dismiss at pages 5-8.)

-21-

Because the LCCYSSA is administrative arm of Lancaster County, I dismiss the LCCYSS as a defendant from this action.

<u>Section 1983 Claims</u>

An individual's allegation that his constitutional rights have been violated by the conduct of another is actionable against certain defendants through 42 U.S.C. § 1983.  Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights.  <u>Gruenke v. Seip</u>, 225 F.3d 290, 298 (3d Cir. 2000).

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right.  <u>Chainey v. Street</u>, 523 F.3d 200, 219 (3d Cir. 2008)(<u>quoting</u> <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)).

-22-

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

### Respondeat Superior

Municipalities, such as Lancaster County, cannot be held liable under Section 1983 based solely upon a theory of respondeat superior liability.  Instead, to establish liability against a municipality, a plaintiff must identify a municipal policy or custom that caused his injury.  Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010) (citing Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir.  2000)).  A "policy" includes "official proclamations made by a municipal decisionmaker with final authority", and "custom" is defined as "practices of state officials ... so permanent and well settled as to virtually constitute law."  Kelly, 622 F.3d at 263 (quoting Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000))(internal quotation marks omitted).

The moving defendants contend that, to the extent that plaintiff's Amended Complaint seeks to assert a Section 1983 claim against LCCYSSA, that claim must be dismissed because plaintiff has not identified a policy or custom of Lancaster

-23-

County or the LCCYSSA which plaintiff alleges to have caused a violation of his federal constitutional or statutory rights.[18]

In response, plaintiff asserts that "respondeat superior is totally irrelevant in the context of the present case scenario.  Hence, the Defendants are manufacturing issues which are totally out of the context of this case."[19]

Contrary to plaintiff's assertion, the doctrine of respondeat superior is relevant to this action to the extent that plaintiff seeks to hold Lancaster County liable for the actions of its employees (the moving defendants) which alleged violated plaintiff's federal constitutional or statutory rights.  See Kelly, supra.  A municipality, such as Lancaster County, cannot be held liable for constitutional violations caused by municipal employees, such as case workers, based on the theory of respondeat superior.  Rather, plaintiff must identify a municipal policy or custom that caused the alleged violations of his rights.  Kelly, 622 F.3d at 263 (citing Langford, 235 F.3d at 847).[20]  Plaintiff has not pled facts identifying any such policy or custom of Lancaster County or the LCCYSSA.

_____

[18]    Memorandum of Law in Support of Defendants' Motion to Dismiss at pages 7-8.

[19]    Response to Defendants['] Motion to Dismiss at page 5.

[20]    Because plaintiff (1) cannot hold Lancaster County liable for the actions of the moving defendants based upon respondeat superior, and (2) has not alleged or identified a policy or custom of Lancaster County that caused a violation of plaintiff's federal rights, the averments in plaintiff's Amended Complaint would fail to state a claim against Lancaster County if it had been named as a defendant.

Individual Defendants

          Each of the named individual defendants are identified
in the opening paragraphs of plaintiff's Amended Complaint.
However, the additional averments in plaintiff's complaint are
insufficient to state claims against defendants Gonzales, Kinsey,
or Hamby.  However, for the reasons explained below, I conclude
that plaintiff has not plead sufficient facts to support a
reasonable inference that any of the individual defendants
participated in, or had actual knowledge of and acquiesced in,
any violation of plaintiff's federal rights.

          Liability under the theory of respondeat superior or
vicarious liability is inapplicable to Section 1983 suits in
which a plaintiff alleges that a government official or employee
violated the plaintiff's rights.  Rather, in order to state a
claim for a constitutional violation pursuant to Section 1983,
the plaintiff "must plead that each Government-official
defendant, through the official's own individual actions, has
violated the Constitution."  Arguet v. United States Immigration
and Customs Enforcement ("ICE"), 643 F.3d 60, 71 (3d Cir. 2011).

          Each defendant in a Section 1983 action must have
personal involvement in the alleged violation of the plaintiff's
rights, either by personal participation or by "actual knowledge
and acquiescence."  Ketchmar v. Bachtle, 2005 U.S.Dist.
LEXIS 11136, at *6-7 (E.D.Pa. June 6, 2005)(Joyner, J.)(citing

-25-

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988).  For
the following reasons, Counts I through IV of the Amended
Complaint fail to state a claim against the individual defendants
in this action, Ms. Gonzalez, Ms. Kinsey, and Ms. Hamby.

<em>Count I</em>

     Count I of plaintiff's Amended Complaint alleges a
violation of his Fourth Amendment rights.  Plaintiff avers that
on some unspecified date, some unidentified "city officials, City
Housing Inspectors, State Health Department, Children and Youth
caseworkers, and [a] Drug and Alcohol Caseworker" came to
plaintiff's home to discuss issues pertaining to his children.
and that he "felt it was very intrusive to say the least."[21]

     None of the names of the moving defendants Gonzalez,
Kinsey, and Hamby are mentioned in Count IV of the Amended
Complaint.  Moreover, Count IV does not identify any conduct that
violated plaintiff's rights under the Fourth Amendment to be free
from unreasonable searches and seizures.  Plaintiff avers that he
felt that the visit, by whomever was present, "was very intrusive
to say the least."  However, he also states that he opened the
door to the visitors and granted some or all of them access to
his home.[22]  Because plaintiff does not allege that (1) any of
defendants Gonzalez, Kinsey, or Hamby were present at plaintiff's

_____

[21]     Amended Complaint at page 17.

[22]     Amended Complaint at page 17.

house, or (2) that any of them engaged in conduct which might constitute an unreasonable search or seizure, I dismiss Count I of the Amended Complaint against defendants Gonzalez, Kinsey, and Hamby.

*Count II*

Count II of the Amended Complaint alleges violation of plaintiff's rights under the Firth Amendment. Plaintiff avers that Shea Kinsey was plaintiff's case worker and that "she violated his Constitutional right to a fair and impartial judge of Plaintiff's character as a parent".[23]

Plaintiff further avers that, in addition to being his case worker, "Shea Kin[sey] was also the 'Senior Adoptions Coordinator' for Children and Youth Agency" and that her sole duty as the Senior Adoptions Coordinator was to coordinate adoptions for children in her care.  Plaintiff avers that defendant Kinsey's dual role as his case worker and as adoption coordinator represented a "conflict of interest" that violated his "constitutional rights to a fair and impartial judge."[24]

As an initial matter, I note that the limitations of the Fifth Amendment restrict only federal government action, Nguyen v. United States Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983), whereas the Fourteenth Amendment limits state and

---

[23]     Amended Complaint at page 18.

[24]     Amended Complaint at page 19.

-27-

local government action.  See Biener v. Calio, 361 F.3d 206, 214 (3d Cir. 2004).  Although plaintiff's heading for Count II reads "Violation of Fifth Amendment Rights", I construe Count II of the Amended Complaint as alleging that his due process rights have been violated.

As the Supreme Court of the United States has stated that it is "axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process." Caperton v. A. T. Massey Coal Company, 556 U.S. 868, ___, 129 S. Ct. 2252, 2259, 173 L.Ed.2d 1208, 1218 (2009).  However, the Supreme Court also noted that "most matters relating to judicial disqualification [do] not rise to a constitutional level." Id.

Here, although plaintiff asserts that defendant Kinsey violated his due process right to an impartial judge, he also alleges that Ms. Kinsey was a caseworker rather than the judge who presided over the underlying state court proceedings which resulted in the termination of his parental rights.

Judge Hoberg – not defendant Kinsey -- presided over the state court proceedings which resulted in the termination of plaintiff's parental rights.  Therefore, plaintiff's Amended Complaint fails to state a claim that defendant Kinsey violated plaintiff's due process right to a fair and impartial judge in the termination proceedings.

-28-

*Count III*

Count III of the Amended Complaint alleges a violation of plaintiff's Sixth Amendment rights.  Plaintiff avers that the compassionate lawyers who actually tried to help him were "out-numbered by the 'Mechanical' lawyers of this case who sought out and did the mechanics of the case without really doing anything to aid Plaintiff's case" during the dependency and termination-of-parental-rights proceedings in the Court of Common Pleas of Lancaster County, Pennsylvania, Orphans Court Division.[25]

Plaintiff also contends that it was wrong for his counsel to try to compel plaintiff to follow the family plan established by the LCCYSSA and to trust the LCCYSSA.[26]

The right to effective assistance of counsel guaranteed by the Sixth Amendment only applies to proceedings which are criminal in nature.  <u>Contreras v. Attorney General of the United States</u>, 665 F.3d 578, 584 (3d Cir. 2012).  However, the due process guarantee provided by the Fourteenth Amendment requires the appointment of counsel for an indigent parent at a termination proceeding where the "fundamental fairness" of the proceeding would be jeopardized if counsel was not appointed and the indigent parent was required to proceed pro se.  <u>Lassiter v. Department of Social Services of Social Services of Durham</u>

---

[25]    Amended Complaint at page 20.

[26]    Amended Complaint at page 21.

<u>County, North Carolina</u>, 452 U.S. 18, 26-27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649 (1981).

To the extent that Count III seeks to allege that plaintiff's due process rights were violated by the ineffectiveness of his appointed counsel at the termination proceedings, plaintiff's averments fail to state such a claim.

First, plaintiff's allegations do not indicate that defendants Gonzalez, Kinsey, or Hamby were involved in any way with the appointment of his attorney for the termination proceedings.

Moreover, to the extent that plaintiff seeks to assert this claim against LCCYSSA or Lancaster County, the Allegations in plaintiff's Amended Complaint do not indicate any involvement by the LCCYSSA or Lancaster County in the appointment or supervision of plaintiff's attorney for the termination proceedings.

Finally, plaintiff fails to identify any action or conduct by any attorney representing him which jeopardized the fundamental fairness of the dependency and termination proceedings which gave rise to this action.  For these reasons, I dismiss Count III of the Amended Complaint.

*Count IV*

Count IV of the Amended Complaint alleges a violation of plaintiff's rights under the Fourteenth Amendment of the United States Constitution.

It appears that plaintiff seeks to assert a substantive due process claim in Count IV against LCCYSSA, defendant Kinsey, and defendant Gonzalez.[27]

In Count IV, Plaintiff asserts that defendant Kinsey characterized him as a "male chauvinist pig" when, at some time by someone, she was asked to characterize plaintiff.  Plaintiff further asserts that Ms. Kinsey, and the LCCYSSA, did not inform the trial court of defendant's prior conviction for Corruption of minors until the final day of the termination-of-parental rights proceedings.[28]

Plaintiff also asserts that defendant Gonzalez, at some unspecified time in some unspecified context, asked "the Plaintiff's Paramour, if the plaintiff had raped her and [if] that [was] how she got pregnant."[29]

To establish a substantive due process claim, a plaintiff must prove the particular interest (a liberty or property interest) at issue is protected by the substantive due

---

[27]    Amended Complaint at page 27.

[28]    Amended Complaint at page 27.

[29]    Amended Complaint at page 27.

-31-

process clause and the government's deprivation of that protected interest "shocks the conscience".  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).  Simply, alleging that a public official or entity acted with "an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision."  Id. at 220.  Government action which "shocks the conscience" includes "only the most egregious official conduct".  Id. at 219 (quoting United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 400 (3d Cir.2003)); see also Armbruster v. Cavanaugh, 410 Fed. Appx. 564, 567 (3d Cir. 2011) ("Substantive due process is a doctrine reserved for egregious official conduct that touches upon the most fundamental of civil liberties.").

        Here, the alleged conduct which plaintiff attributes to Ms. Kinsey, and Ms. Gonzalez in Count IV are statements which, although they could have been more delicately phrased, do not rise to the conscience-shocking level required for plaintiff to state a substantive due process claim.  Therefore, I will dismiss Count IV as against defendants Gonzalez and Kinsey.  Plaintiff does not mention Ms. Hamby anywhere in Count IV of his Amended Complaint or describe any actions by Ms. Hamby that shock the conscience.  Therefore, to the extent that plaintiff seeks to assert a substantive due process claim against defendant Hamby, that claim is dismissed.

<u>Absolute and/or Qualified Immunity</u>

The individual defendants contend that they are entitled to absolute and/or qualified immunity with respect to the claims asserted against them because "a reasonable basis existed for preparing for, initiating[,] and prosecuting dependency and termination of parental rights proceedings against Plaintiff."[30]

Plaintiff responds that the individual defendants are not entitled to either absolute or qualified immunity because "[i]n the context of the case, the Plaintiff[']s right was clearly violated" and because "it is clear that the respective [officers' conduct] was unlawful in the situation they confronted[,] and hence, they cannot be granted with absolute or qualified immunity."[31]

However, as discussed above, plaintiff does not specify or explain what right or rights the defendant's "clearly violated".[32]   Therefore, I cannot make a determination concerning whether or not the individual defendants are entitled to absolute or qualified immunity at this juncture.

---

[30]   Memorandum of Law in Support of Defendants' Motion to Dismiss at page 8.

[31]   Response to Defendants['] Motion to Dismiss at page 7.

[32]   <u>See</u> <u>id.</u>

CONCLUSION

For the reasons discussed above, I grant the motion to dismiss filed by defendants Gonzalez, Kinsey, and Hamby, and dismiss plaintiff's Amended Complaint without prejudice for plaintiff to file a second amended complaint in accordance with this Opinion.

I dismiss plaintiff's request for an Order granting plaintiff custody of his two daughters, F.R.L. and S.R.C., and reinstating his parental rights.  Because the Rooker-Feldman doctrine bars me from entering such an order, I dismiss plaintiff's claim for such relief with prejudice.

I dismiss the LCCYSSA as a defendant in this action because LCCYSSA is an administrative arm or department of a municipal government and, therefore, not a proper party to this action.

Finally, I dismiss plaintiff's claims against defendants Gonzalez, Kinsey, and Hamby in Counts I through IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.